IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SHERRY KUUIPO PAULO,

    Defendant.

Case No. 19-4090-01-CR-C-BCW

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

**1. The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri, represented by Timothy A. Garrison, United States Attorney, and Lucinda Woolery and Gregg Coonrod, Assistant United States Attorneys; and the Department of Justice Civil Rights Division, represented by Assistant Attorney General Eric S. Dreiband, Julia Gegenheimer, Special Litigation Counsel, and Janea Lamar, Trial Attorney, (collectively, "the Government" or "the United States"), and the defendant, Sherry Paulo ("the defendant"), represented by Christopher Slusher.

The defendant understands and agrees that this plea agreement is only between the defendant and the Government as represented by the parties above, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

**2. Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count One of the Information charging the defendant with violating 18 U.S.C. § 242, that is,

deprivation of rights under color of law, and Count Two of the Information charging the defendant with violating 18 U.S.C. § 1347, that is, health care fraud. The defendant also agrees to forfeit to the United States the property described in Forfeiture Allegation of the Information. By entering into this plea agreement, the defendant admits having knowingly committed these offenses and admits being guilty of these offenses.

3. **Factual Basis for Guilty Plea**. The parties agree that the facts constituting the offenses to which the defendant is pleading guilty are as follows:

### Background

The Missouri Department of Mental Health ("DMH") is statutorily obligated to provide services to developmentally disabled persons. DMH offers residential services, such as Individualized Support Living services ("ISL"). ISLs allow residents to live in the community and still receive the necessary services. Second Chance Homes ("SCH") is an organization that provided residences for developmentally disabled persons, including those who are a part of DMH's ISL.

Victim C.D. resided at a SCH residence at 298 Claymine Drive, in Fulton, Missouri. C.D. was a developmentally disabled Medicaid beneficiary. In 2008, C.D. was declared a ward of the state. The state court then appointed a county official as his guardian. C.D.'s guardian chose SCH as C.D.'s immediate caregivers and providers of his ISL services.

Defendant Paulo worked as the Professional Manager at SCH. The defendant lived and worked at the SCH residence on Claymine Drive in order to supervise SCH residents, including C.D., throughout the night. She was responsible for coordinating with Fulton County officials to determine C.D.'s level of care and ensure that his needs were met.

### C.D.'s Health Declined

In 2014, defendant Paulo observed that C.D. struggled to maintain a healthy weight. When this first began, C.D. was taken to the doctor so that he could be monitored. The doctor prescribed C.D. meal supplements to help him gain and maintain a healthy weight. Defendant Paulo was responsible for ensuring that C.D. took the meal supplements as prescribed.

Defendant Paulo observed that C.D. continued to struggle with maintaining

2

a healthy weight through 2015 and 2016. Defendant Paulo did not, however, take C.D. to the doctors who were monitoring his weight loss or ensure that C.D. was taken to those doctors. She also did not take C.D. to see any of his other treating physicians during this time, including his mental health providers. In fact, C.D. did not see a doctor after December 2015. Instead, the defendant falsely wrote and signed SCH and doctors' notes representing that C.D. was treated by physicians in 2016.

### C.D.'s Death

Sometime before October 2016, the defendant took C.D. and C.D.'s housemate (who is also developmentally disabled) out of their assigned residence at SCH. Defendant Paulo brought C.D. and his housemate to her personal home. At the time defendant Paulo removed C.D. from his assigned SCH residence, and as defendant Paulo then observed, C.D. exhibited prolonged, loud howling indicative of physical and mental distress. To hide the sound of his distress, and to keep people from knowing that he had become "too skinny," the defendant put C.D. and his housemate in the unfurnished and unfinished basement of her home. Specifically, the defendant left C.D. in a small area of the basement with a bricked-over window, exposed pipes and wiring, and a concrete floor. This area was sectioned off by a makeshift wall made of wooden planks.

After being housed in the defendant's basement for a period of time, C.D.'s physical health rapidly declined. C.D. became unable to swallow and would not eat. The defendant observed and knew of C.D.'s decline. The defendant decided not to seek medical assistance for C.D. because she did not want to be blamed for mistreating him and did not want anyone to know that she had taken C.D. out of his assigned residence.

Approximately one week later, the defendant became aware that C.D. was suffering from an acute medical emergency. The defendant had been trained to call 911, perform CPR, and seek immediate medical assistance if any SCH resident suffered a medical emergency. The defendant did not take any of these actions because she did not want to be blamed for C.D.'s poor health and did not want anyone to know she had taken C.D. out of his assigned residence.

Despite observing C.D.'s physical distress and obvious medical need, defendant Paulo decided to withhold medical treatment or assistance for C.D.

C.D. died that evening in the defendant's presence at her personal home.

### Concealing C.D.'s Death

A few days after C.D. died, the defendant took C.D.'s body out of her

3

personal home and placed it in a City of Fulton street trash can. The defendant then took the trash can to the SCH home at 298 Claymine Drive. The defendant moved the trash can around the SCH Claymine location over the next several days because it began to smell.

The defendant obtained a wooden crate from her husband. With the assistance of her husband and another individual, the defendant put cement in the bottom of the wooden crate. The defendant and others then placed the trash can containing C.D.'s body into the crate, filled it with cement, and put it on to a trailer. The defendant and others then transported the crate containing C.D.'s body to the defendant's storage unit.

Over the next several months, the defendant actively concealed C.D.'s death. She instructed C.D.'s housemate to lie in C.D.'s bed so that it appeared that C.D. was still there. The defendant used C.D.'s Electronic Benefit Transfer ("EBT") card to purchase groceries so that it appeared that C.D. had bought food and other necessities. The defendant additionally falsified records required by SCH, DMH, and C.D.'s County caseworker and guardian, making entries into those records to give the false appearance that C.D. was still alive and well.

On April 17, 2017, a new company was scheduled to buy the SCH location at Claymine Drive and take over the care of SCH residents. On the morning of April 17, 2017, the defendant told SCH staff that C.D. had gone missing, even though she knew that C.D. was dead. The defendant submitted a missing person report to the Fulton Police Department that falsely described C.D. as missing, even though the defendant knew C.D. was deceased.

On April 17, 2017, April 18, 2017, and April 21, 2017, the defendant falsely told the Fulton, Missouri police that she last saw C.D. on April 17, 2017, in his bed shortly before she reported him missing. The defendant instructed her husband, son, and daughter (all of whom worked for her at SCH) to falsely tell the police that they had seen C.D. on April 16, 2017.

On April 24, 2017, officers from the Fulton Police Department discovered the crate in the defendant's storage unit that contained C.D.'s body inside a cement-encased trash can.

### Civil Rights Violation

In approximately 2016, defendant Sherry Paulo, in her capacity as Professional Manager of SCH, while acting under color of law, willfully deprived C.D. of a right protected by the United States Constitution when she was deliberately indifferent to C.D.'s serious medical need, which resulted in C.D.'s death.

4

### Health Care Fraud

Between approximately September 2016 and April 2017, defendant Sherry Paulo submitted, or caused to be submitted, claims to Medicaid for services she purportedly rendered to C.D. Those claims were false because C.D. was dead during that time period. The amount wrongfully paid by Medicaid was $106,795.00.

### Forfeiture and Restitution

The defendant is also pleading guilty to the forfeiture count. As described above, the defendant's commission of health care fraud caused the government a loss of $106,795.00. The defendant admits that $106,795.00 represents property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense. The defendant further acknowledges that she will be jointly and severally liable with the other defendants who are determined to have caused this loss. She further acknowledges that this is the amount of restitution.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands, and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining the defendant's guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands, and agrees that in calculating the offense level for the charges to which the defendant is pleading guilty, all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2), or as part of the "offense of conviction" pursuant to U.S.S.G. § 1B1.2.

5. **Statutory Penalties.** The defendant understands that upon the defendant's plea of guilty to Count One of the Information charging the deprivation of rights under color of law, the maximum penalty the Court may impose is not more than any term of years or for life, or both, five years of supervised release, an order of restitution, a maximum $250,000 fine, and a $100

mandatory special assessment, which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class A felony.

In addition, the defendant understands that upon defendant's plea of guilty to Count Two of the Information charging health care fraud, the maximum penalty the Court may impose is not more than ten years of imprisonment, three years of supervised release, a $250,000 fine, and a $100 mandatory special assessment which must be paid in full at the time of sentencing. The defendant further understands that this offense is a Class C felony.

6. **Sentencing Procedures.** The defendant acknowledges, understands, and agrees to the following:

    a. In determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission. While these Guidelines are advisory in nature, and the Court ordinarily would have the discretion to impose a sentence either less than or greater than the court-determined advisory Guidelines range, in this instance the parties agree, pursuant to Rule 11(c)(1)(C), that the Court must impose sentence as follows:

        i. A term of imprisonment ranging between 14 to 17.5 years;
        ii. Restitution in the amount of $106,795.00 will be paid;
        iii. An order of forfeiture will be entered; and
        iv. Five years of supervised release will be ordered.

    If the Court accepts this plea agreement, it must inform the defendant that sentence will be imposed in accordance with this agreement of the parties. If the Court rejects this plea agreement, it must, on the record and in open court, inform the parties that the Court rejects the plea agreement, advise the defendant personally that because the Court is rejecting the plea agreement the Court is not required to impose sentence in accordance with the agreement of the parties, give the defendant an opportunity to withdraw the defendant's guilty plea, and further advise the defendant that if the plea is not withdrawn, the Court may dispose of the case less favorably toward the defendant than the plea agreement contemplated;

    b. The Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

c. In addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to five years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

d. If the defendant commits a supervised release violation, the Court may revoke supervised release and impose an additional period of imprisonment of up to five years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed five years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

e. Any sentence of imprisonment imposed by the Court will not allow for parole;

f. The defendant agrees that the United States may institute civil, judicial, or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest, and the defendant will not contest any such forfeiture proceedings;

g. The defendant agrees to forfeit all interests the defendant owns or over which the defendant exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p) (which is applicable to this action pursuant to 18 U.S.C. § 982(b)(1)), including but not limited to the following specific property: currency in the amount of $106,795.00. With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution;

h. The defendant agrees to fully and truthfully disclose the existence, nature, and location of all assets forfeitable to the United States, either directly or as a substitute asset, in which the defendant, any co-defendants and any co-conspirators have or had any direct or indirect financial interest, or exercise or exercised control, directly or indirectly, during the period from September 1, 2016, to the present. The defendant also agrees to fully and completely assist the United States in the recovery and forfeiture of all such forfeitable assets;

i. The defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before the defendant's sentencing;

j. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that the United States will use the financial information when making its recommendation to the Court regarding the defendant's acceptance of responsibility; and

k. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of forfeitable assets and restitution.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the Government, as part of this plea agreement, agrees not to bring any additional charges against the defendant for any federal criminal offenses related to the defendant's deprivation of rights under color of law or healthcare fraud for which it has venue and that arose out of the defendant's conduct described above.

The defendant understands that this plea agreement does not foreclose any prosecution for acts outside of this investigation of which the Government has no knowledge.

The defendant recognizes that the Government's agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged related to the defendant's deprivation of rights under color of law and healthcare fraud is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with any criminal violations established by the evidence. The defendant expressly waives the defendant's right to challenge the initiation of any charges if the defendant breaches this agreement. The defendant expressly waives the right to assert a statute of limitations defense if charges are initiated following the defendant's breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional

8

charges against the defendant following a breach of this plea agreement, the defendant will not be allowed to withdraw the defendant's guilty plea.

8. **Preparation of Presentence Report.** The defendant understands the United States will provide the Government's version of the offense conduct to the Court and the United States Probation Office. This may include information concerning the background, character, and conduct of the defendant, including the entirety of the defendant's criminal activities. The defendant understands these disclosures are not limited to the counts to which the defendant has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

9. **Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. However, after the plea has been formally accepted by the Court, the defendant may withdraw the defendant's plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal.

Except under circumstances where the Court, acting on its own, fails to accept this plea agreement, the defendant agrees that, upon the defendant's signing of this plea agreement, the facts that the defendant has admitted under this plea agreement as set forth above, as well as any facts to which the defendant admits in open court at the defendant's plea hearing, shall be admissible

9

against the defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the defendant expressly waives the defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the defendant admits in conjunction with this plea agreement.

10. **Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. However, if the Court accepts this Rule 11(c)(1)(C) plea agreement, the Court is bound to impose the sentence agreed to by the parties, as set forth in paragraph 6 above;

    b. The applicable Guidelines Manual is the one that took effect on November 1, 2018;

    c. The applicable Guidelines section for the offense of deprivation of rights under color of law is U.S.S.G. § 2H1.1(a)(1), which provides for a base offense level of 38 based on § 2A1.2 (second degree murder), which is increased by 6 levels pursuant to U.S.S.G. § 2H1.1(b)(1)(B) because the offense was committed under color of law, thus leading to an offense level of 44. The maximum offense level contemplated by the Sentencing Table is 43.

    d. The applicable Guidelines sections for the offense of health care fraud are U.S.S.G. § 2B1.1(2) and § 2B1.1(b)(1)(E), which provide for a base offense level of 6 and a specific offense characteristic that increases the offense level by 8. This offense level of 14 is increased by 2 levels pursuant U.S.S.G. § 2B1.1(b)(10)(C) because the offense involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means; thus leading to an offense level of 16;

    e. Pursuant to the grouping provisions of U.S.S.G. § 3D1.4, the combined offense level for violation of civil rights under color of law and health care fraud is an offense level of 44;

    d. Pursuant to U.S.S.G. § 3A1.1(b)(2), the offense level is increased by 2 levels because the offense involved a vulnerable victim;

10

e. Pursuant to U.S.S.G. § 3B1.1(c), the offense level is increased by 2 levels because the defendant was an organizer, leader, manager or supervisor of any criminal activity;

f. Pursuant to U.S.S.G. § 3C1.1(1) and (2)(A), the offense level is increased by 2 levels because the defendant willfully obstructed or impeded, or attempted to obstruct of impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the offenses of conviction and the obstructive conduct related to the defendant's offense of conviction and any relevant conduct; thus leading to a total offense level of 50. The maximum offense level contemplated by the Sentencing Table is 43;

g. The defendant has admitted guilt and clearly accepted responsibility for the defendant's actions, and has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, the defendant is entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will move the Court to that effect, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and the defendant's pretrial release; or (2) attempts to withdraw the defendant's guilty plea, violates the law, or otherwise engages in conduct inconsistent with the defendant's acceptance of responsibility;

h. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine the defendant's applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

i. The defendant understands that the estimated Guideline calculations set forth in the subsections of this paragraph do **not** bind the Court or the United States Probation Office with respect to the Court's determination of the applicable advisory Guidelines;

j. The defendant and the United States confirm that the agreed sentence set forth in paragraph 6 above is both reasonable and authorized by law;

k. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination

11

Case 2:19-cr-04090-BCW   Document 14   Filed 11/22/19   Page 11 of 19

beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the information. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay; and

l. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that defendant will make during the plea colloquy, support the imposition of the agreed-upon sentence and Guidelines calculations contained in this agreement.

11. **Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge, and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

12. **Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by the defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

a. Oppose or take issue with any position advanced by the defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

b. Comment on the evidence supporting the charge in the Information;

c. Oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States

12

Case 2:19-cr-04090-BCW   Document 14   Filed 11/22/19   Page 12 of 19

remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court does not impose the sentence agreed to by parties in this agreement; and

    d. Oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that the defendant has been advised of, understands, and knowingly and voluntarily waives the following rights:

    a. The right to plead not guilty and to persist in a plea of not guilty;

    b. The right to be presumed innocent until the defendant's guilt has been established beyond a reasonable doubt at trial;

    c. The right to a jury trial and the right to the effective assistance of trial counsel;

    d. The right to confront and cross-examine the witnesses who testify against the defendant;

    e. The right to compel or subpoena witnesses to appear on the defendant's behalf; and

    f. The right to remain silent at trial, in which case the defendant's silence may not be used against the defendant.

The defendant understands that by pleading guilty, the defendant waives or gives up those rights and that there will be no trial. The defendant further understands that if the defendant pleads guilty, the Court may ask the defendant questions about the offense or offenses to which the defendant pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, the defendant's answers may later be used against the defendant in a prosecution for perjury or making a false statement. The defendant also understands the defendant has pleaded guilty to a felony offense and, as a result, will lose the right to possess a

13

firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

15. **Waiver of Appellate and Post-Conviction Rights.**

   a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement defendant waives any right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

   b. The defendant expressly waives her right to appeal her sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal her sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

   c. The defendant's knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence includes waiving the right to raise on appeal or on collateral review any argument that (1) the statutes to which the defendant is pleading guilty are unconstitutional, and (2) the admitted conduct does not fall within the scope of the statutes.

16. **Financial Obligations.** By entering into this plea agreement, the defendant understands and agrees to the following financial obligations:

   a. The Court must order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with other uncharged related criminal activity.

   b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

   c. The defendant will fully and truthfully disclose all assets and property in which the defendant has any interest, or over which the defendant exercises

control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing, and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full.

    d. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility.

    e. At the request of the USAO, the defendant agrees to undergo any polygraph examination the United States might choose to administer concerning the identification and recovery of substitute assets and restitution.

    f. The defendant hereby authorizes the USAO to obtain a credit report pertaining to the defendant, which will be used by the USAO to evaluate the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

    g. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $200 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of the defendant's fulfillment of this obligation at the time of sentencing.

    h. The defendant certifies that the defendant has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that the defendant will make no such transfers in the future.

17. **Waiver of FOIA Request.** The defendant waives all rights, whether asserted directly or by a representative, to request or receive, or to authorize any third party to request or receive, from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be

15

sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees**. The defendant waives all claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement**. If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw the defendant's plea of guilty.

The defendant also understands and agrees that in the event the defendant violates or withdraws from this plea agreement, all statements made by the defendant to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by the defendant before a grand jury or any tribunal, or any leads from such statements or testimony shall be admissible against the defendant in any and all criminal proceedings. The defendant waives any rights that the defendant might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by the defendant subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges entering into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that the defendant is satisfied with the assistance of counsel, and that counsel has fully advised the defendant of the defendant's rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, the defendant's attorneys or any other party to induce the defendant to plead guilty.

21. **No Undisclosed Terms.** The United States and the defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

22. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

Timothy A. Garrison
United States Attorney

Dated: 11/18/2019

By  *[signature: Lucinda S. Woolery]*
Gregg R. Coonrod
Lucinda S. Woolery
Assistant United States Attorneys
Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122

Eric S. Dreiband
Assistant Attorney General

Dated: 11/18/2019

By  *[signature]*
Julia Gegenheimer
Special Litigation Counsel
Janea Lamar
Trial Attorney
Civil Rights Division
950 Pennsylvania Avenue NW
Washington, DC 20530
Telephone: (202) 616-3941

18

I have consulted with my attorney and fully understand all of my rights with respect to the offense charged in the Information. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 11/14/2019

Sherry K. Paulo
Defendant

I am defendant Sherry K. Paulo's attorney. I have fully explained to the defendant the rights the defendant has with respect to the offenses charged in the Information. Further, I have reviewed with the defendant the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with the defendant. To my knowledge, Sherry K. Paulo's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 11/14/2019

Christopher Slusher
Attorney for Defendant

19